UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SONJA MACK,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>GREYHOUND LINES, INC.,<br><br>　　　　　　Defendant. | Case No. 24-cv-10747<br>Honorable Shalina D. Kumar<br>Magistrate Judge David R. Grand |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 21)**

**I.	INTRODUCTION**

Plaintiff Sonja Mack ("Mack") sues defendant Greyhound Lines, Inc. ("Greyhound"), her former employer, alleging racial, age, and sex discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act (ELCRA), M.C.L. 37.2101 *et seq*. ECF No. 1-3. Greyhound filed a motion for summary judgment, which is fully briefed. ECF Nos. 21, 24, 25. The Court held a hearing on the motion on September 3, 2025, and the matter is now ready for determination. For the reasons set forth below, the Court **GRANTS** Greyhound's motion.

## II.  FACTS

In May 2019, Mack began working for Greyhound as a Motor Coach Operator ("MCO") assigned to the Detroit terminal. ECF No. 21-2, PageID.287-88. Mack was an extra board MCO, meaning she did not have an assigned route or schedule but was on-call to drive routes as needed in Greyhound's Midwest Region. *Id*. at PageID.288, 291; ECF No. 21-3, PageID.392. A Greyhound dispatcher would notify an extra board MCO such as Mack when she was needed to drive a route. ECF No. 21-2, PageID.288.

In September 2020, Greyhound closed its Detroit hub due to the COVID-19 pandemic. *Id*. at PageID.292, 380. Detroit MCOs were given four options with regard to continuing their employment with Greyhound: (1) relocate to another Greyhound location; (2) if eligible, take a leave of absence; (3) resign or retire; or (4) elect to be furloughed to remain on the roster for future assignments. *Id*. at PageID.380. Mack testified at her deposition that she never received the letter from Greyhound detailing these choices,[1] but she notified her Detroit supervisor that she would relocate to the Cleveland terminal. *Id*. at PageID.293-94.

---

[1] Greyhound mailed the letter to the address it had on record for Mack. She testified that she moved in late 2019 or early 2020 but never provided Greyhound with her new address. ECF No. 21-2, PageID.272-73, 307.

Shortly after relocating to the Cleveland hub,[2] Mack took leave under the Family Medical Leave Act ("FMLA") from September 25 to October 17, 2020. ECF No. 21-3, PageID.393, 421, 426. Greyhound's pay-records show that Mack returned to work and drove out of the Cleveland hub on October 20, 2020. *Id*. at PageID.422-23. She drove regularly out of Cleveland for approximately two weeks until, at her request, she relocated to the Miami terminal. ECF No. 21-2, PageID.382. She explained that she needed to transfer to Miami immediately to help care for an aging grandparent. *Id*. Upon arriving in Miami, however, Mack discovered that her grandmother lived in Appollo Beach, Florida, approximately 260 miles away from Miami. *Id*. at PageID.296. Mack drove a handful of routes out of Miami in late November, staying in the dormitory room at the terminal, but after other drivers told her she could not use the dorm room as a long-term residence, she requested to be transferred back to Cleveland. *Id*. at PageID.296-98, 302, 384.

Greyhound approved Mack's transfer back to the Cleveland terminal. *Id*. at PageID.384. By December 4, 2020, Mack was back driving routes out

---

[2] Notably, Mack never moved and had no intention of moving to Cleveland. ECF No. 21-2, PageID.295, 307-08. She would either drive to the Cleveland terminal from her home in Detroit or would stay in the dormitory room Greyhound provided for limited overnight use. *Id*. at PageID.295.

of Cleveland. ECF No. 21-3, PageID.423. She drove routes on six of the next nine days, before she developed a severe tooth ache. *Id*. The pain medication she took for her tooth prevented her from driving routes, and the COVID-19 pandemic made it difficult for her to secure dental treatment. ECF No. 21-2, PageID.304-06. Mack testified that the Cleveland terminal's City Manager referred her to the FMLA administrator and gave her "some paperwork," but she did not remember if she filled it out. *Id*. at PageID.306.

Mack drove another handful of routes on the days surrounding Christmas 2020, but on January 4, 2021, Greyhound wrote to Mack because she had not been available for work for an extended period. ECF No. 21-3, PageID.424; ECF No. 21-2, PageID.387. Greyhound's letter instructed Mack to make contact with the Cleveland terminal City Manager by January 8, 2021 to discuss her employment status. *Id*. It further warned that "[f]ailure to return to work or…to provide [Greyhound] with the appropriate and acceptable documentation [of illness] will result in your discharge" and "that requests to resign…must be provided in writing." *Id*.

Mack testified that she did not receive Greyhound's letter, which again had been sent to Mack's prior address. *Id*. at PageID.307. Nevertheless, Mack resigned her MCO position with Greyhound. ECF No. 21-2, PageID.389. Mack's resignation letter cited the hardship of working

out of state, a lack of driving assignments, and the resulting lack of income as the reasons for her resignation. *Id*. It also expressed Mack's keen interest in returning to Greyhound once the Detroit hub reopened. *Id*.

Mack pursued her interest in renewing her employment with Greyhound when the Detroit hub reopened in Spring 2021, but Greyhound did not rehire her. *See id*. at PageID.360, 366-76.

### III. Analysis

#### A. Standard of Review

Federal Rule of Civil Procedure 56 "directs a court to grant summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Viet v. Le*, 951 F.3d 818, 822–23 (6th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). This language compels summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 823 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A nonmoving party has not made that sort of showing if "the record taken as a whole could not lead a rational trier of fact to find" in the nonmoving party's favor. *Id*. (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

To establish that a "rational trier of fact" could rule in its favor, the nonmoving party must identify "specific facts, as opposed to general allegations," establishing the necessary element. *Id*. (citing 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2727.2, at 501 (4th ed. 2016)).

> Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage. Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment. A discrimination plaintiff's generic testimony that she was qualified for a position, for example, does not suffice to withstand summary judgment on that qualification issue without specific facts supporting this general testimony.

*Id*. (internal citations and quotations omitted). Indeed, "the nonmoving party must present significant probative evidence revealing that there is more than some metaphysical doubt as to the material facts necessitating a trial." *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 526 (6th Cir. 2023) (internal quotation marks omitted).

### B. ELCRA Claims

Mack's complaint asserts that Greyhound discriminated against her based on her race, gender, and age in violation of ELCRA, M.C.L. 37.2201 *et seq*. ELCRA prohibits an employer from intentionally treating a person worse because of her race, gender, or age. *See White v. Dep't of Transp*.,

964 N.W.2d 88, 92 (Mich. Ct. App. 2020); M.C.L. 37.2202; *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 658 (2020). Specifically, Mack contends that Greyhound treated her differently from other similarly situated white, male, and younger employees by drastically reducing her hours, amounting to a de facto discharge. See ECF No. 1-3.

Courts analyze ELCRA discrimination cases under the same standards used for cases brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018). Plaintiffs may establish ELCRA violations through either direct or circumstantial evidence. *Tilley v. Kalamazoo Cty. Road Comm'n*, 777 F.3d 303, 307 (6th Cir. 2015) (citing *Greiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)).

Under the well-established *McDonnell Douglas* framework courts apply to discrimination cases relying on circumstantial evidence, a plaintiff must first make out a prima facie case of discrimination by the employer. *Smith v. City of Toledo*, 13 F.4th 508, 515 (6th Cir. 2021) (citing *McDonnell Douglas Corp, v. Green*, 411 U.S. 792, 802-03 (1973)). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Id*. The burden shifts back to the plaintiff "to show that the

reason the employer gave was not the true reason, but merely a pretext for discrimination." *Id*. (internal marks and citations omitted).

To make out a prima facie case under a disparate treatment theory of discrimination, a plaintiff must show: (1) she is a member of a protected group; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) similarly situated non-protected employees were treated more favorably. *Id.* (quoting *Jackson v. VHS Detroit Receiving Hosp., Inc.,* 814 F.3d 769, 776 (6th Cir. 2021)); *see also Hunter v. General Motors LLC*, 807 F. App'x 540, 544 (6th Cir. 2020). Greyhound does not dispute that Mack is a member of three protected groups—she is a Black woman over 40—or that she was qualified to be an MCO, but it does argue that Mack has failed to establish the third and fourth elements of her prima facie case.

### 1. Adverse Employment Action

To survive summary judgment, Mack must demonstrate that she suffered an adverse employment action. "An adverse employment action involves 'a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some other actual and unfavorable change in job status.'" *McNeal v. City of Blue Ash*, 117 F.4th 887, 900 (6th Cir. 2024) (quoting *Milczak v. General Motors,*

*LLC*, 102 F.4th 772, 786 (6th Cir. 2024)). To establish an adverse employment action, an employee need only "show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).

Mack contends Greyhound's reduction of her driving assignments after she relocated to the Cleveland terminal amounted to an adverse employment action. Although a reduction by Greyhound of Mack's driving assignments may have qualified as an adverse employment action, Greyhound disputes that it reduced Mack's assignments. Greyhound argues that Mack's limited hours while working out of Cleveland were instead the result of: (1) her approved FMLA leave of absence from September 25 through October 17, 2020; (2) her requested, but brief and ultimately aborted, relocation to Miami in November 2020; and (3) her unavailability to drive for several days in December due to pain medication she was taking for a toothache. See ECF No. 21-3, PageID.393; ECF No. 21-2, PageID.304-06, 382-85.

Mack does not directly address her lack of availability as the cause of her reduced driving assignments but instead emphasizes her own deposition testimony and interrogatory answers that she asked for a transfer to Miami because she "was making no money in Cleveland" and

that Cleveland was "adjusting my schedules, cutting my hours down." *Id*. at PageID.295. She also points to her testimony that, when she asked the Cleveland District Manager why her hours were being cut, he told her "to go find another job." *Id*. at PageID.296; *see also* ECF No. 24-5, PageID.827.

"It is well-established that a plaintiff's testimony can provide a sufficient evidentiary basis to defeat summary judgment, even if it is self-serving." *Williams v. Memphis Light, Gas & Water*, 2024 WL 3427171, at *3 (6th Cir. July 16, 2024) (citing *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015)). A plaintiff's testimony setting forth "specific facts, as opposed to general allegations," may establish a factual dispute sufficient to withstand summary judgment. *Viet*, 951 F.3d at 823. However, "[c]onclusory statements unadorned with supporting facts are insufficient to…defeat summary judgment." *Id*. (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)) (internal marks omitted). Testimony in which a plaintiff baldly asserts her belief that she experienced discriminatory treatment must be disregarded. *Williams,* 2024 WL 3427171, at *3; *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) ("rumors, conclusory allegations and subjective beliefs…are wholly insufficient evidence to establish a claim of discrimination as a matter of law").

The Court finds that Mack's testimony about Greyhound cutting her hours in Cleveland to be nothing more than conclusory speculation. Mack testified at her deposition that management at the Cleveland terminal was tampering with her schedules and cutting her hours, but her testimony included no details comparing the number and value of assignments she received in Cleveland to those she drove from Detroit. Indeed, when asked if she knew how much she drove in Cleveland, she responded that she did not. ECF No. 21-2, PageID.295. Nor did Mack point to any evidence to corroborate that she, in fact, drove fewer assignments during the periods she was available to work in Cleveland than she did in Detroit.

Mack's testimony that her manager's dismissive suggestion that she get another job demonstrated that Greyhound was cutting her hours, thereby creating an adverse employment action, is also pure conjecture. The manager's comment, though callous, does not acknowledge that Mack's drives, in fact, had been reduced, nor is the comment probative of the cause of any such reduction. Because Mack's testimony about the alleged cutting of her hours does not supply evidence, based on "more than mere speculation, conjecture, or fantasy," to allow a jury to find that she suffered an adverse employment action, the Court does not believe that she has established this prong of a prima facie case and Greyhound is thus

entitled to summary judgment.[3] *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### 2. Similarly Situated Comparator

Even if Mack could establish that she suffered "some harm respecting an identifiable term or condition of employment," she nevertheless fails to establish the fourth component of a prima facie case for disparate treatment because she has not identified a similarly situated employee outside of her protected classes who was treated differently. *See Jackson*, 814 F.3d at 776. To qualify as similarly situated, a comparator employee must be similar to the plaintiff in all of the relevant aspects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

### a. Racial Discrimination

Mack does not identify any similarly situated white MCO who was treated more favorably than she was treated. During her deposition, Mack identified several MCOs by name: Clint Griffith, Nate Cobb, Mark Hunter, Darryl Sherman, Felicia Hardison, and Lisa Croskey. ECF No. 21-2,

---

[3] At the hearing, counsel for Mack conceded that her claim regarding Greyhound's refusal to place Mack on furlough was not an adverse employment action. He also confirmed that she no longer asserted a claim for constructive discharge.

PageID.291. But these MCOs cannot serve as comparators because, like Mack, they are all Black. *Id*. at PageID.292. Moreover, these MCOs all worked out of the Detroit terminal. Mack explicitly testified that her claims of discrimination arose only from her time working out of the Cleveland terminal—"It doesn't come out of Detroit, not out of Miami." *Id*. at PageID.314.

Mack also referenced Greyhound employees named Chandra, James, Cheryl, and Rochelle. *Id*. at PageID.310-12. Again, according to Mack, these individuals are all Black. *Id*. Additionally, none of them, except possibly Chandra, whose position was not specified, were MCOs—James was a manager, Cherly, a ticket agent, and Rochelle was an assistant manager. Finally, only Rochelle worked out of the Cleveland terminal—James and Chandra worked at the Detroit terminal and Cheryl worked at the Cincinnati terminal. *See id*. Finally, these Greyhound employees had all been terminated before Mack resigned. *See id*. In sum, the employees that Mack identified by name did not occupy the same position, were not outside her racial protected class, and/or were not treated more favorably. Because Mack cannot establish a prima facie disparate treatment case based on race, Greyhound is entitled to summary judgment on this claim.

### b. Gender Discrimination

Likewise, Mack does not identify any similarly situated male MCO who was treated more favorably than she was treated. She identified a fellow Detroit MCO who relocated to Cleveland, Merl, and noted that "Merl never came and complained to me." *Id*. at PageID.315. But she offered no testimony, or any other evidence, that he or any other male was treated more favorably than she was.[4] Mack has not pointed to any fact that would establish that Merl or any male MCO had been assigned more routes than Mack had been assigned. Mack's general assertions that male employees were treated more favorably does not provide the Court with the means necessary to assess whether any of these male employees were similarly situated to her. *See Tschappatt v. Crescent Metal Prod., Inc.*, 798 F. App'x 887, 889-90 (6th Cir. 2020) (courts cannot consider the factors for being "similarly situated" without a reference to a specific person). As a result,

---

[4] Mack testified generally that male MCOs were treated more favorably in Cleveland, stating: "the males were not being harassed," "Merl never complained to me about how they treated him. I think they had more respect for males as well. I really do." ECF No. 21-2, PageID.315. Mack did not allege a hostile work environment claim, nor would the record before the Court support such a claim. Mack's testimony identifies no details of harassment and certainly not of harassment so pervasive to create an objectively hostile work environment. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21-22 (1993). To the contrary, Mack's testimony represents only her subjective belief that she faced harassment that similarly situated male MCOs did not. *See Mitchell*, 964 F.2d at 585.

she cannot make out a prima facie case of disparate treatment based on gender and summary judgment in Greyhound's favor is appropriate. *See id.*

### c. Age Discrimination

Finally, Mack has not created a genuine fact dispute over whether Greyhound treated younger MCOs more favorably. Again, Mack offers only general assertions about younger MCOs:

> [Mack] Cleveland…they would give all the—most of the runs to the younger people, younger people than myself.
>
> Q. Who were those younger people?
>
> [Mack] I don't know these drivers…
>
> ***
>
> [Mack] But they would send all the younger drivers out over and above me.

ECF No. 21-2, PageID.316. As noted, courts require a reference to a specific person to consider the factors for being similarly situated.[5] *See Tschappatt*, 798 F. App'x at 889. Here the Court cannot ascertain whether any of the supposedly younger drivers Mack references generally were

---

[5] Mack described one specific young driver in her deposition testimony, but she recounted that Greyhound had cut his runs and that he had not driven a route in a week. ECF No. 21-2, PageID.316. This testimony does not support and, in fact, undercuts Mack's claim that younger MCOs were treated more favorably than she was.

similarly situated to Mack, and thus, she cannot establish the fourth prong of a prima facie disparate treatment claim based on age.

Accordingly, none of Mack's discrimination claims under ELCRA survive Greyhound's motion for summary judgment.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court **GRANTS** Greyhound's motion for summary judgment (ECF No. 21) and **DISMISSES WITH PREJUDICE** Mack's complaint (ECF No. 1-3).

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: September 17, 2025